**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Robert Lamar McInnis III, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Tim Schuetzle, LeAnn Bertsch, and | ) | |
| Kathy Bachmeier, | ) | Case No. 1:08-cv-061 |
| | ) | |
| Defendants. | ) | |

The plaintiff, Robert Lamar McInnis III ("McInnis"), is an inmate at the North Dakota State Penitentiary ("NDP). He initiated the above-entitled action on June 12, 2008, by filing a lodging a pursuant to 42 U.S.C. § 1983 along with an application to proceed *in forma pauperis*. This matter is now before the court for an initial review as mandated by 28 U.S.C. §1915A.

I.   **BACKGROUND**

Within the span of approximately three weeks McInnis has lodged three complaints with this court. In the first complaint, which was lodged on May 20, 2008, McInnis sought recompense for injuries he allegedly sustained when his right hand and arm were pinched in his cell door's tray slot. See McInnis v. Strand, Case No. 1:08-cv-054. In the second complaint, which was also lodged on May 20, 2008, McInnis asserted a constitutional claim of deliberate indifference to his serious medical needs along with a state law claim of medical malpractice against Dr. John Hagan. The court summarized the factual basis for the claims against Dr. Hagan as follows in its initial review:

> McInnis injured his left knee while in incarcerated in the Stark County Jail in Dickinson, North Dakota. He twice sought treatment in August 2007. He was prescribed him a pain killer (Tramadol) as well as muscle relaxers. He was told by his doctors to keep weight off of his leg and to use crutches along with a "straight

1

> brace." He was to undergo MRI on the afternoon of August 21, 2007, but was transported the Stark County Jail to the North Dakota State Penitentiary (NDP) prior to his appointment.
>
> McInnis was not given his prescription medication or access to crutches and a "straight brace" upon his arrival at the NDP. Nor was he immediately scheduled for an MRI. His repeated requests for medication, crutches, and brace went unheeded by Dr. Hagan, although he was given a "knee sleeve" that he deemed ineffective.
>
> In February 2008 McInnis was referred to an orthopedist, who within minutes concluded that McInnis was a surgical candidate and needed an MRI. McInnis underwent an MRI in late February or early March 2008, the results of which revealed tears in his anterior cruciate ligament and meniscus. He is scheduled for surgery in the not too distant future.

Id. at Docket No. 7. In the complaint now before the court for initial review, McInnis takes exception to deference given by the Defendants to Dr. John Hagan's medical assessments. Specifically, he alleges:

> Since August 23rd, 07 2 days after I came to prison I had spoke to Warden about Dr. Hagan refusing to Dr. orders from Dickinson clinic. He told me to go through grievance procedures. And I did.
>
> Note: I do not exactly remember the dates when I wrote the grievances. Inmate records won't give me copies of them.
>
> I wrote to Kathy Bachmeier denied. She is [illegible] then to Tim Schuetzle (Warden) denied and said Leaned Bortsch D.O.P. Said she agrees with Warden and won't do anything different. Ignoring th problem my knee got worse. I was in a lot of pain. Also I have mental disorders. I was frightened that my knee wouldn't get fixed and be so damaged I might loose it. I tried to speak to Warden on Jan. 22nd on my Warden review about Dr. Hagan ignoring me about my left knee. And told me he's the doctor and what he says about medical issues stands. And he don't care what the other doctor said from hospital day before or so I came here from Dickinson Hospital.
>
> Note: I had my surgery done on my left knee on Thursday 29th of May and was a major knee surgery. I had a new ACL put in my knee using some of my hamstring ligament grafted. And other ligaments reattached with new ACL with some kind of circle metal cylinder with then on bottom wich (sic) was hammered into my bone then screwed in place. Then a pin to hold something else in place. Which will always be there.
>
> Dr. William Canham did the surgery at Medcenter One. He told the MRI looked better then it was. And if I didn't get it taken care of when I did I had a very good chance that I would have severely damaged my whole knee.

>He also took out a bunch of cartilage from my miniscus and side knee joint. I have 3 scope holes and a 31/2 in[ch] incision.  15 staples and like 4-6 stiches (sic) I think.  I can't walk on my yet.

(Docket No. 2-2).  He seeks $50,000 in damages from each Defendant along with courts costs. Additionally, he requests the restoration of his good time along and that he be released on parole.

**II.    STANDARD OF REVIEW**

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit.  Jones v. Bock, __ U.S. __,127 S.Ct. 910, 914 (2007); Woodford v. Ngo, __ U.S.__, 126 S.Ct. 2378, 2382 (2006).  One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit.  28 U.S.C. § 1915A.  In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.  Id.

In enacting the PLRA, Congress chose not to impose any heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 does not impose any such requirements. Jones v. Bock, __ U.S. __,127 S.Ct. 910, 919 (2007).  Consequently, to state a cognizable claim, the complaint needs only to meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2202 (2007) (per curiam).  In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what would be required of attorneys.  E.g., Erickson v. Pardus, 127

S.Ct. at 2202. The court may not dismiss a *pro se* complaint unless it "appears beyond doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); see also Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988).

Nevertheless, even though the pleading requirements are minimal and complaints are to be liberally construed, this does not mean the court must accept anything and everything that is filed by a *pro se* prisoner. In enacting the screening requirement, Congress expected it to be more than a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously baseless, frivolous, or malicious.

"A complaint is frivolous if it lacks an arguable basis in law or fact." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)). "It lacks an arguable basis in law if the claim is based on an indisputable meritless legal theory." Id. And, in terms of whether there is an arguable basis in fact, the court may disregard any factual allegations that are clearly fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992); Edwards v. Snyder, 478 F.3d 827, 229-830 (7th Cir. 2007) (discussing the difference between factual and legal frivolousness).

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S.Ct. 1955, 1965 n.3 (2007). At the very least, even *pro se* prisoners must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Bell

Atlantic Corp. v. Twombly, 127 S.Ct. at 1964).   In the case of an action for a violation of federal civil rights under 42 U.S.C. § 1983,  this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim.  West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997).  Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities for damages must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability.  Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999); Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990); Martin v. Sargent, 780 F.2d 1334, 1337-39 (8th Cir.1985).

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law.  E.g., Edwards v. Snyder, 478 F.3d at 830; Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[1]

---

[1] In Edwards v. Snyder, the Seventh Circuit stated the following:
Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery.  See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir. 2006).
478 F3d at 830.

**III.     DISCUSSION**

McInnis's complaint is deficient in at least two respects.  First it does not specifically allege a violation of any federal constitutional or statutory rights.  Second, the relief that McInnis seeks the court cannot grant either because it is beyond the power of the court or because the allegations of the complaint are not sufficient to support the relief requested.

   **A.     McInnis has not pled a cognizable claim**

As noted above, to state a cognizable claim under § 1983, McInnis must allege a violation of a federal constitutional or statutory right and that the alleged violation was committed by a person acting under the color of state law.  Nowhere in the complaint does McInnis invoke his constitutional rights or allege a violation of either the Constitution or federal law.  Consequently, his complaint fails to state a claim for relief under § 1983.

The standard complaint form that McInnis used for making his complaint instructed him to stick to the facts and avoid legal argument or case citation.  It may be that he followed these instructions too literally in failing to alleged a violation of federal constitutional or statutory law.  Consequently, for this and other reasons, McInnis should be permitted an opportunity to amend his complaint to allege a violation of his federal constitutional or statutory rights.

   **B.     Remedies**

The power of the court to consider claims for relief against state officials who are sued in their official capacities under §1983 action extends only to relief that the court is empowered to grant.  Having reviewed McInnis's complaint, it is apparent there no relief the court could grant based on his current complaint.

### 1.     Restoration of good time

McInnis seeks, inter alia, the restoration of all of his good-time credits. He does not elaborate on when, how, or why he was stripped of his good-time credits. In any event, the United States Supreme Court has made it clear that a § 1983 action cannot be used to challenge, directly or indirectly, the length or validity of a prisoner's confinement, including deprivations of good-time credit, and that this can only be done using habeas corpus remedies. Edwards v. Balisok, 520 U.S. 641 (1997); Preiser v. Rodriguez, 411 U.S. 475 (1973); see Wilkson v. Dotson, 544 U.S. 74, 78-82 (2005); Heck v. Humphery, 512 U.S. 477 (1994); Wolff v. McDonnell, 418 U.S. 539 (1974). In summarizing this line of cases (i.e., Preiser, Wolff, Heck, and Balisok), the Supreme Court stated the following in Dotson:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

544 U.S. 78-82. Consequently, McInnis may not seek restoration of his good-time credits in this action. The same can be said with his parole request.

### 2.     Release on Parole

McInnis' requests that he be immediately released on parole is untenable in a § 1983 action. In Wilkinson v. Dotson,, the United States Supreme Court determined that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility ... and parole suitability," but may not seek "an injunction ordering his immediate or speedier release into the community." 544 U.S. 74, 82 (2005). At most, an inmate can seek as a remedy "consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant

of parole. Id. When a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from ... imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). As a result, civil rights complaints seeking immediate or speedier release are barred by the doctrine of Heck v. Humphrey, 512 U.S. 477, 481 (1994).

### 3. Monetary damages

Finally, McInnis seeks to recovery $50,000 from each Defendant along with his court costs. To the extent that McInnis seeks to recover monetary damages, he must sue a non-immune defendant who acted under the color of state law, such as the prison official or officials who were directly involved or responsible for the alleged constitutional violations. See Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006); Keeper v. King, 130 F.3d 1309, 1314-15 (8th Cir. 1997); Murphy v. Arkansas, 127 F.3d 750, 754-755 (8th Cir. 1997).

McInnis' complaint is silent as to whether he is suing the Defendants in their official or individual capacities. Under binding Eighth Circuit case law, it is presumed when a complaint is silent the suit is against the person only in his or her official capacity. E.g., Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Johnson v. Outboard Marine Corporation, 172 F.3d 531, 535 (8th Cir. 1999).[2]

---

[2] Johnson v. Outboard Marine Corporation summarizes the Eighth Circuit's rule as follows:

This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity. *See Artis v. Francis Howell North Band Booster Ass'n Inc.*, 161 F.3d 1178, 1182 (8th Cir.1998); *Murphy*, 127 F.3d at 754. Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir.1989); *Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619-20 (8th Cir.1995). Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her

The problem with suing Schuetzle, Bertsch, and Bachmeier in their official capacity is that they are all employed by the State. And, a suit against a state employee in his or her official capacity is the same as suing the State, which has immunity under the Eleventh Amendment for any claims for damages in an action brought pursuant to 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Alsbrook v. City of Maumelle, 184 F.3d at 1010; see also Kentucky v. Graham, 473 U.S. 159, 166-167 (1985) (discussing distinctions between individual and official capacity claims).

Given that McInnis's complaint must be construed as suing the Defendants only in their official capacities, he is barred from recovering any money damages. However, McInnis can cure this deficiency by making clear in an amended complaint, preferably in the caption as well as the body of the complaint, that he is suing the Defendants in their individual capacities.

## IV.   CONCLUSION AND RECOMMENDATION

McInnis is hereby **GRANTED** leave to file an amended complaint to cure the deficiencies mentioned above. He must file the amended complaint with the court by July 14, 2008, with the understanding that it will again be subject to an additional §1915A screening upon receipt. If McInnis does not file an amended complaint by July 14, 2008, it is the undersigned's **RECOMMENDATION** that his action be **DISMISSED WITHOUT PREJUDICE** and that his application to proceed *in forma pauperis* be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

---

official capacity is merely a suit against the public employer. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

172 F.3d at 535. As noted in Baker v. Chisom, 501 F.3d at 926-927 (Gruender, J., concurring in part and dissenting in part), the Eighth Circuit's "bright-line" rule is contrary to the law in most of the other circuits and, arguably, contrary to the spirit of the most recent Supreme Court notice-pleading cases.

Pursuant to Local Rule 72.1(3)(4), plaintiff has the right to object to this Report and Recommendation. He need not do so, however, if he files an amended complaint. If he does not file an amended complaint, then the failure to file appropriate objections may result in the recommended action being taken. In this case, the court will allow the objections to be filed on or before June 25, 2008, (which is more than the time normally allotted) given that is the date by which the plaintiff must file an amended complaint.

Dated this 16th day of June, 2008.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge